PHARR, APPELLANT, v. TICHENOR, ADMR., APPELLEE.

Ohio Appeals, Tenth District, Franklin County.

No. 205008.   Decided January 21, 1960.

*Mr. Stephen W. Young*, for appellant.
*Mr. Mark McElroy*, attorney general, and *Mr. A. L. Greenspur*, assistant attorney general, for appellee.

MARSHALL, J. This case comes to this court on an appeal from a decision of the Administrator of the Bureau of Unemployment Compensation, appellee herein, dated May 19, 1959, finding that Edgar L. Pharr, appellant herein, is an employer subject to the Unemployment Act, beginning July 1, 1954.

The case was submitted upon the Transcript of the Record and briefs of the respective parties.

The Ohio Unemployment Compensation Law gives this definition of "employer":

"Section 4141.01 (A), Revised Code.

" 'Employer' means any individual or type of organization including any partnership, association, trust, estate, joint-stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee, or the successor thereof, or the legal representative of a deceased person who subsequent to December 31, 1936, had in employment three or more individuals at any one time within a calendar year.

" '* * * .' "

The Act defines "Employment," as follows:

"Section 4141.01 (B), Revised Code.

" 'Employment' means service performed for wages under any contract of hire, written or oral, express or implied, including service performed in interstate commerce and service performed by an officer of a corporation, without regard to whether such service is executive, managerial, or manual in nature, and without regard to whether such officer is a stockholder or a member of the board of directors of the corporation.

"(1) 'Employment' includes:

" '* * * .' "

"(C) Services performed by an individual for remuneration unless it is shown to the satisfaction of the administrator that such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact, that such service is outside the usual course of the business for which such service

is performed, and that such individual is customarily engaged in an independently established trade, occupation, profession, or business.

"* * *"

The Act further defines what is not included in "employment," as follows:

"Section 4141.01 (B), Revised Code

"* * *"

"(2) 'Employment' does not include:

"* * *"

"(g) Service performed for one or more principals by an individual who is compensated on a commission basis, who in the performance of the work is master of his own time and efforts, and whose remuneration is wholly dependent on the amount of effort he chooses to expend;

"* * *"

It is admitted that said Edgar L. Pharr, appellant, at all times material to this action, operated individually an Auto-For-Hire service in the City of Cincinnati, Ohio, under the name of Madisonville Cab Service. The business was licensed and operated under the Auto-For-Hire regulations of the City of Cincinnati, and the City tested and licensed the drivers of the autos. Operations were conducted on a 24 hour per day basis, the day being divided into two twelve hour shifts. Some drivers worked less than 12 hours. They were permitted to start and end their driving at different times. The city established a number of "stands" at which Autos-For-Hire could park and wait for customers. Appellant operated a dispatching service by means of which calls made to the office could be relayed to the drivers. Drivers were compensated on a commission basis by which, at the end of each day, the driver turned into the office for the company 50% of the total fares collected. 10% was placed in the gas fund and used to buy gas for the vehicle. The remaining 40% was retained by the driver as his compensation. This 40% could either be kept each day by the driver, or else turned in to the company and received from the company as his compensation at the end of the week.

The administrator made Findings of Fact, which are supported by the Record, showing that the owner of the cabs fur-

nished the taxicabs, paid all oil and other supplies, except gasoline, made needed repairs to the taxicabs, furnished office facilities and telephone or radio service, and furnished garage space and cab stands. The drivers had to report all accidents, carry out certain instructions, conform to the rules of the company, operate his cab during a specified period of time and return it at the conclusion thereof. The drivers kept a daily trip sheet showing his trips and fares collected. The company could summarily dismiss a driver and a driver could refuse to drive if he chose not to drive.

This appeal is governed by the provisions of Section 4141.26, Revised Code.

Both parties, in their briefs, appear to agree that the issue now before the court is quite limited in scope. It is not necessary for this court to make a determination as to whether appellant *was an 'employer'* under Section 4141.01 (A), Revised Code. It is sufficient to determine if appellant *was excluded from 'employment,'* under the provisions of Section 4141.01 (B) (2), Revised Code.

An analysis of Section 4141.01 (B) (2), Revised Code, shows that three elements must be present if appellant is to be considered a person *excluded from 'employment.'* These three ncessary elements are as follows:

1. One who is compensated on a commission basis.

2. One who, in the performance of the work, is master of his own time and efforts.

3. One whose remuneration is wholly dependent on the amount of effort he chooses to expend.

In order for the drivers of the taxicabs to be persons excluded from the term 'employment' it must be shown that their employment was the type that fulfilled all three of the statutory elements of exclusion, mentioned above. Let us therefore test their employment conditions by facts established by the record in this case.

The first test, compensation on a commission basis, was present in this case. The record is clear on this point and the appellee has not challenged it.

And turning to the third test, that the remuneration to the taxi driver is wholly dependent on the amount of effort he

chooses to expend, we find little disagreement, since he gets compensated if he works and gets nothing if he does not work.

It is therefore apparent that the second test is the critical one in this case. Is the taxi driver in this case, in the performance of his work, the master of his own time and effort? If he is, then all three tests have been met to exclude him from employment, as contemplated by Section 4141.01 (B) (2), Revised Code. However, if he is not, then this test has not been met and he cannot be considered excluded from such employment.

The taxidrivers check out their cabs at specific times, they receive calls from the dispatcher, either at one of the taxi stands, or by telephone or radio, and transport their fares as requested from place to place, returning to the garage or stand at a designated time, and report their days' activities and fares collected on daily trip sheets as required by the rules of the company. While the taxidriver is rendered quite mobile by the fact that he is quite on his own after he leaves the stand, and is covering new territory between calls to and from the dispatcher, we believe the evidence in this case does not indicate that he is master of his own time or is master of his own efforts. On the contrary, while he is entrusted with a taxicab he is consistently instructed by the dispatcher of the company as to the times and places he is to pick up fares and where he is to deliver them. And when his shift is ended, he is expected to report back to his home base, make his report and turn his taxicab over to the company or to the succeeding driver. His efforts are directed by the company. He knows this and is governed by this requirement of the business or he would not long be permitted to retain his job for the company. The same observation holds true as to his use of time during the shift he is permitted to drive the taxicab. If a driver should claim the right to be master of his own time, or the master of his own efforts, during the shift he is assigned to operate his taxicab, he could be, and undoubtedly would be, summarily dismissed as a driver for the company.

Appellee has cited a number of cases from courts in other states, where drivers of taxicabs were held not exempt from coverage, under laws fairly similar to the Ohio Act. Several recognized a similar three-fold employment test, comparable

to the one considered herein, and on the basis of such test and the conditions of employment ruled that taxidrivers were employees of the company, requiring the company to pay premiums on unemployment insurance. These cases tend to throw some light on the problem at hand, and support the position we have taken, but are not controlling.

Appellant cites and relies considerably on the case of *Hudson* v. *The Ohio Bus Line Co.*, 56 Ohio App., 483. However, we distinguish that case from the present case since that case is one where the drivers paid in advance a fixed, daily, rental fee, and in turn kept all revenue collected from the use of the taxicab. Under those conditions the court might well conclude that the driver was master of both his own time and his efforts. We do not believe that case is similar as to the facts to this case and is therefore not a precedent to influence risk in deciding the case at bar.

We conclude that the appellant was not excluded from employment, under the terms of Section 4141.01 (B) (2), Revised Code, and that the decision of the administrator was correct and should be sustained. Appellant's appeal is accordingly denied and overruled.